The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Neill Fuleihan and Phillip A. Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement dated July 15, 1994 and at the hearing as:
STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier on the risk at the time of the injury was Cigna Insurance Company.
4. 28 pages of medical records of Dr. K. Andrew Goler, Dr. Frank Haydon, Dr. Stewart Harley, Dr. James Hoski, and Dr. Raymond Tidman, and a modified functional capacities appraisal were stipulated into evidence.
5. Plaintiff's average weekly wage at the time of injury was $251.20.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of this hearing, plaintiff was 55 years old and had acquired her GED.
2. On May 27, 1992, plaintiff, as part of her job duties with defendant-employer, was pushing a buggy loaded with denim jeans onto a lift, when the buggy became lodged and plaintiff felt a sharp pain in her back which caused her to fall to the floor. Plaintiff sustained injuries to her left side, back and neck.
3. As a result of this incident on May 27, 1992, plaintiff sustained an injury to her back.
4. The plaintiff was transported to Fannin Regional Hospital for treatment immediately after the injury. She was referred by the hospital to Dr. Stewart J. Harley.
5. At that time, plaintiff had no fractures, but had some degenerative changes in her spine. In addition, plaintiff had a mildly bulging disc at L-2 and L4-5, and at C5-6 and C-7 of the cervical spine without significant effect on neural elements.
6. Dr. Harley treated the plaintiff conservatively through June 1992. Plaintiff attempted physical therapy and the use of a TENS unit to alleviate her pain, but since both increased her symptoms, they were discontinued.
7. Plaintiff next was treated by Dr. Andrew Goler who recommended a two level anterior cervical discectomy and fusion. Plaintiff, however, was reluctant to consider surgery and none was performed. She continued on pain medication as prescribed by Dr. Goler.
8. Plaintiff was next examined on January 20, 1993, by Dr. Frank Haydon. There were several conflicting findings in plaintiff's physical examination and consequently, Dr. Haydon ordered a functional capacity evaluation to be performed on plaintiff.
9. Dr. Haydon again examined plaintiff on March 8, 1993. Plaintiff's injury of May 27, 1992 was a cervical and lumbar strain superimposed upon some pre-existing degenerative changes of her spine.
10. As a result of her incident on May 27, 1992, plaintiff reached maximum medical improvement on March 8, 1993. Plaintiff was able to return to work at that time without any work restrictions.
11. As a result of her incident on May 27, 1992, plaintiff has no permanent partial disability.
12. On referral of her attorney, plaintiff next was examined on March 30, 1993, by Dr. James Hoski. Dr. Hoski also noted inconsistencies between plaintiff's complaints of pain and his physical examination.
13. Plaintiff continued to complain of back pain and weakness of her left foot and was next treated by Dr. Raymond Tidman on April 16, 1993 and April 27, 1993. It was recommended that plaintiff continue physical therapy.
14. The plaintiff was offered a position by defendant-employer to return to work on May 3, 1993. The job offered plaintiff by defendant-employer was her old job, which allowed plaintiff to change positions freely and required minimal amounts of bending and lifting. Defendant-employer installed an air lift system at plaintiff's work station which allowed the bundles of cloth to be lifted up or down according to plaintiff's desires. At most, plaintiff would be required to lift a single pair of denim jeans at a time and because the band-in sewer was adjustable, the plaintiff could do the job either standing or sitting.
15. Plaintiff returned to work on May 3, 1993, but worked less than two hours. Plaintiff complained that she was unable to perform her work because of her back pain. Plaintiff's testimony concerning the extent of her disability is contrary to the activities she was observed engaging in by a private investigator, which included work at a flea market involving bending, stooping, lifting, carrying and walking. At the time plaintiff was able to return to work, she was able to walk, bend and lift without the aid of a walking cane or any support devices. Plaintiff's testimony concerning her inability to perform the job offered by defendant-employer is not credible.
16. Other than plaintiff's attempt to work on May 3, 1993, plaintiff has not earned any wages with defendant-employer since May 27, 1992.
17. Plaintiff had the physical capability to perform the job offered by defendant-employer.
18. Plaintiff did not justifiably refuse the job offered by defendant-employer on May 3, 1993.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 27, 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, in that she sustained a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. On May 3, 1993, plaintiff refused employment procured for her by defendant-employer which was suitable to her capacity; therefore, plaintiff is not entitled to any compensation at any time during the continuance of such refusal. N.C. Gen. Stat. § 97-32.
3. As a result of the compensable injury of May 27, 1992, plaintiff is entitled to temporary total disability compensation of $167.47 per week, from May 27, 1992 through May 3, 1993. N.C. Gen. Stat. § 97-32.
4. Defendant-employer shall pay all medical expenses incurred by the plaintiff as a result of her compensable injury on May 27, 1992. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $167.47 per week, from May 27, 1992 until May 3, 1993. As said amount has accrued, payment shall be made in a lump sum, subject to an attorney fee provided below. Defendants are to receive credit for any payments previously paid to plaintiff.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on May 27, 1992.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to her counsel.
4. Plaintiff shall not be paid any compensation after May 3, 1993 and as long as she refuses work suitable to her physical capacity.
5. Defendants shall pay the costs due this Commission for the initial hearing before the Deputy Commissioner and each side shall bear its own costs for hearing before the Full Commission.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER
DCS:bjp